**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**CHERYL T.,**

**Plaintiff,**

**Case No. 1:25-cv-00545**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

**OPINION AND ORDER**

**Defendant**.

## OPINION AND ORDER

This case is before the Court to consider a final decision of the Commissioner of Social Security which denied Plaintiff's application for disability insurance benefits. That final decision was issued by an Administrative Law Judge on March 10, 2025 following a remand from this Court. After filing the complaint in this case, Plaintiff moved for judgment on the pleadings (Doc. 10) and the Commissioner filed a similar motion (Doc. 12). For the following reasons, the Court will **DENY** Plaintiff's motion for judgment on the pleadings, **GRANT** the Commissioner's motion, and **DIRECT** the Clerk to enter judgment in favor of the Defendant.

## I. BACKGROUND

Plaintiff protectively applied for disability benefits on December 8, 2020, alleging that she became disabled on January 5, 2017. After initial administrative denials of her claim, and after an unfavorable decision was issued by an Administrative Law Judge on September 27, 2021, following which the Appeals Council denied review, Plaintiff filed a civil action in this Court. The parties then stipulated to a remand, and the Court issued a remand order effective on March 12, 2024. The Appeals Council then remanded the case to an ALJ with instructions, including reevaluating Plaintiff's severe left wrist disorder and her alleged symptoms, further considering her residual functional capacity, and, if warranted, expanding the record.

After remand, the ALJ held a second administrative hearing on February 12, 2025, at which Plaintiff, a medical expert, Dr. Ghazi, and a vocational expert, Dale Pasculli, all testified. On February 21, 2025, the ALJ issued an unfavorable decision, followed by an amended decision issued on March 10, 2025. In that decision, the ALJ found, first, that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2019. Next, he found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. He then determined that between that date and September 20, 2019, Plaintiff suffered from one severe impairment, that being left wrist arthritis with triangular fibrocartilage complex tear status-post

three left wrist surgeries. He further found that this impairment met the criteria for disability under the Listing of Impairments from January 5, 2017 through September 20, 2019.

The ALJ then made findings concerning the period after September 20, 2019. He found that Plaintiff's severe impairment was the same, but that it no longer met the Listing. Moving to the next step of the sequential evaluation process, the ALJ concluded that Plaintiff had the ability to perform a limited range of light work, concluding that she was limited to lifting and carrying five pounds with her left hand and that she was also limited to occasional handling, fingering, and feeling with that hand. Also, she could not climb ladders, ropes, or scaffolds, could not crawl, and could not work at unprotected heights or around hazardous machinery.

Plaintiff had past relevant work as an assembler, and the ALJ found that she could no longer perform that job. However, the ALJ determined that Plaintiff could do unskilled light jobs such as school bus monitor, investigator of dealer accounts, and usher. He also concluded that such jobs existed in significant numbers in the national economy. As a result, he found that Plaintiff was not under a disability as defined in the Social Security Act at any time after September 20, 2019. Lastly, he concluded that because her period of disability ended more than twelve months before she applied for benefits, she was not entitled to any payments, thus making it an unfavorable decision.

In her motion for judgment on the pleadings, Plaintiff raises a single issue, stated *verbatim* as follows:

> The ALJ erred in failing to follow the District Court and Appeals Council remand orders, to develop the record, and to properly evaluate the favorable opinion of medical expert ("ME") Dr. Ghazi.

Plaintiff's memorandum, Doc. 10-1, at 1.

## II. THE KEY EVIDENCE

### A. Hearing Testimony

Plaintiff, who was 52 years old at the time of the first administrative hearing, first testified that she had obtained a GED and was able to drive. She had not worked since she suffered a workplace injury in January of 2017. At that time, she was a production worker for Ford. She had worked for a mail handling company before that. Plaintiff said she was able to walk for ten minutes and stand for fifteen but had no difficulty sitting. She could lift up to 25 pounds.

Next, Plaintiff said that the injury was to her left wrist. She was able to pick up small objects with her left hand, though, and could make a fist. She had undergone three surgeries with the last having been performed in 2019. She did not think it improved her condition, and she had to take breaks when performing activities that involved the use of her hand. Plaintiff

described a fairly full range of chores she could do, and she also helped care for her father. She said that she would get cramping and burning in her wrist when doing these things and that she took hydrocodone for pain. She also used a wrist brace and had undergone physical therapy but did not think it had helped her.

At the second hearing, Plaintiff said she had not had treatment for her wrist since 2019. She had been taking medication for fibromyalgia for the past year and a half. That was a new diagnosis since the last hearing. She still had pain with repetitive movement of the hand.

The medical expert, Dr. Ghazi, was asked to express an opinion as to Plaintiff's functional capacity given the condition of her left wrist. He said that due to pain caused by the injury she met the criteria for disability under section 1.18 of the Listing of Impairments. Functionally, she could lift five pounds and occasionally handle, finger, and feel.

The vocational expert, Mr. Pasculli, first testified that Plaintiff's job at the Ford plant was classified as medium, although it might have been performed at the light exertional level. He was then asked questions about a person with Plaintiff's vocational profile who could work at the light exertional level and who could frequently finger, handle, and feel with the left hand. There were also some postural and environmental restrictions. He responded that such a person could do Plaintiff's past work as it was actually performed, and that would be true even if the person were limited to lifting five pounds with the left hand. If handling, fingering, and feeling were limited to occasional, the person could not do that job. He or she could, however, work as a school bus monitor or investigator of dealer accounts as well as an usher. Mr. Pasculli also gave numbers for those jobs as they existed in the national economy. Lastly, he said that employers would not tolerate an employee being off task for more than ten percent of the time.

**B. The Medical Evidence**

Plaintiff underwent surgery on her left wrist on January 13, 2017. She then participated in occupational therapy until May or June of that year. In May of 2018 she had a second surgery for dorsal compartment release and De Quervain's release after developing pain that did not respond to other treatment modalities. She had yet another surgical procedure performed in February of 2019 to treat radiocarpal and ulnocarpal synovitis and a degenerative TFCC tear. At an independent medical examination performed in April of that year, she reported that her pain was worse after the surgery and that she had to discontinue therapy due to pain. Plaintiff said she had difficulty performing household chores like cooking and cleaning. Dr. Auerbach, who performed the examination, concluded that Plaintiff could lift up to 20 pounds with her left hand but had limited use of it for repetitive gripping or grasping. He believed she would achieve maximum medical improvement by August. Subsequent records do not indicate any further treatment for her wrist impairment, but do show a diagnosis of osteoarthritis in the left wrist.

**C. Opinion Evidence**

The relevant opinion evidence includes functional assessments from two state agency reviewers, Drs. Miller and Brauer, rendered in 2021. They both concluded that Plaintiff could do light work and frequently use her left arm for gross manipulation. There was no consultative examination, so the only other opinion evidence about Plaintiff's functional capacity after September 20, 2019 is Dr. Ghazi's testimony.

## III. STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").
>
> Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012).

## IV. DISCUSSION

### A. The ALJ's Decision

The ALJ began his analysis by concluding that Plaintiff's wrist impairment satisfied section 1.21 of the Listing of Impairments through September 20, 2019. Section 1.21 deals with soft tissue injuries and states that disability is shown when there is surgical management of such an injury designed to save, reconstruct, or replace the body part in question, the management exceeds the 12-month continuous duration requirement, and maximum benefit from therapy has not yet been achieved. The ALJ explained that he reached his conclusion based on the fact that

the three surgeries in question spanned a period greater than twelve months, and lasted until Plaintiff was discharged from her surgeon's care on September 20, 2019. (Tr. 1076).

The ALJ next discussed how it was that he determined that Plaintiff had received maximum benefit from therapy as of that date. He noted that there had been no treatment on the left wrist since then and no evidence of any change in Plaintiff's symptoms since the final surgery. He stated that the records from that time period showed "no obvious instability, intact motor strength, and the ability to make a full fist" and that "[n]o further improvement was anticipated or further treatment envisioned after September 20, 2019...." *Id*. That led him to conclude that maximum benefit from therapy had been achieved by that date and that she no longer met the criteria set forth in section 1.21.

As to Plaintiff's functional capacity after that date, the ALJ first found the opinions of Drs. Miller and Brauer to be partially persuasive. He adopted their conclusions that Plaintiff could perform the standing, walking, and sitting requirements of light work and also the lifting requirements with her right hand, a conclusion supported by Dr. Auerbach's findings. However, he credited the medical record of surgical intervention, Plaintiff's testimony, and Dr. Ghazi's opinion in limiting Plaintiff to lifting only five pounds with her left hand and to occasional handling, fingering, and feeling with that hand.

Dr. Ghazi did express the view that even after September 20, 2019, Plaintiff's wrist impairment met the requirements of Section 1.18 of the Listing of Impairments. That section presumes disability if there is an impairment of a major joint in any extremity and, among other things, either "[a]n inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements" or "[a]n inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements." Since the record contained no evidence that Plaintiff was in any way limited in the use of her right hand, the ALJ found Dr. Ghazi's opinion on this point not to be persuasive. Consequently, he determined that with her post-September 20, 2019 residual functional capacity, Plaintiff could do the jobs identified by the vocational expert and was not under a disability after that date.

### B. Step Three Inquiry

As noted, Plaintiff has asserted that the ALJ did not comply with the remand order and did not properly evaluate Dr. Ghazi's testimony. More specifically, she argues that the ALJ did not conduct an in-depth inquiry of Dr. Ghazi about whether her wrist impairment was the medical equivalent of other portions of Listing 1.18 given that the section which Dr. Ghazi did identify was clearly inapplicable. She also contends that the ALJ failed to apply the factors of supportability and consistency to Dr. Ghazi's opinions, crediting his view about her functional limitations but not his opinion about the Listing of Impairments. The Commissioner responds that Plaintiff's counsel requested that the ALJ find the exact closed period of disability that is contained in his decision and that she is bound by that concession. The Commissioner also argues that the questioning of Dr. Ghazi on the issue of the Listing of Impairments was sufficient

and that, in any event, Plaintiff's counsel conceded that it was not even necessary to take any testimony from Dr. Ghazi due to the absence of any treatment records that post-dated September 20, 2019.

The resolution of the issue which Plaintiff has raised is largely dependent on the substance of the testimony given by Dr. Ghazi, although the statements made by her counsel at the hearing have some bearing on the issue as well. Taking those first, counsel advised the ALJ at the outset of the first administrative hearing that Plaintiff's wrist injury "should be considered as meeting or equaling listing 1.21 for soft-tissue injury under continuing surgical management." (Tr. 1187). No mention was made of any other section of the Listing. At the second hearing, counsel said that "we are just looking at the period before the date last insured of 2019." (Tr. 1120). After an off-the-record conversation about how the Listing applied to Plaintiff's claim, counsel stated that "I don't think we need Dr. Ghazi's testimony." (Tr. 1124). Nevertheless, after reviewing the evidence and hearing from counsel that Plaintiff contended that she could not frequently handle, feel, or finger with her left hand, the ALJ decided to take the doctor's testimony. (Tr. 1125-26).

After reviewing the evidence which Dr. Ghazi had before him, the ALJ asked for a functional analysis of what Plaintiff could do after a point in time about which counsel and the ALJ had reached an agreement - presumably the point at which the treatment records ended. He replied that the pain from the injury would affect grasping and squeezing of the hand. That was the sole reason he concluded that section 1.18 was equaled. (Tr. 1129). Dr. Ghazi then gave his opinion as to functionality, which was that Plaintiff was capable of lifting five pounds with the left hand and could perform occasional handling, fingering, and feeling. (Tr. 1129-30). He said there were no other limitations stemming from that injury. (Tr. 1130). When further questioned about the Listing, he explained that he reached his conclusion "[b]ecause this particular listing points out to the painful joint any extremity in her case that would be the left wrist" and "[a}lthough this joint is not very essential in the functionality of the limb, but there's the only one that addresses the condition she has." *Id*. Counsel was invited to, but did not, ask Dr. Ghazi any questions about his testimony.

There is certainly an argument to be made that counsel waived any contention that Plaintiff's impairment met any section of the Listing of Impairments after September 20, 2019, but making that finding is not necessary in order to reject Plaintiff's claim of error. Dr. Ghazi clearly testified that the only section of the Listing that could conceivably have applied to Plaintiff's wrist impairment was section 1.18(d). There was therefore no reason for the ALJ to make any further inquiry on that subject. Further, Plaintiff has not presented any cogent argument that the medical evidence which post-dated September 20, 2019 (and there really is no such evidence) could have been construed to meet or equal any particular section of the Listing. As the court in *Cianfano v. Kijakazi*, 2023 WL 6455758 (S.D.N.Y. Aug. 24, 2023), *report and recommendation adopted*, 2023 WL 5950687 (S.D.N.Y. Sept. 12, 2023) said,

> even though [the claimant] bears the burden at step three, *Lopez v. Berryhill*, 448 F. Supp.3d 328, 346 (S.D.N.Y. 2020), he neither identifies any listing from

> Appendix 1, the criteria of which he believes are met, nor points to any medical findings in the record that "equal in severity to all the criteria for the one most similar listed impairment." *Moore*, 2022 WL 3910600 [(S.D.N.Y. Aug. 31, 2022], at *8 (citing *Sullivan v. Zebley,* 493 U.S. 521, 531, 110 S. Ct. 885, 891, 107 L.Ed.2d 967, (1990)); *accord Powell v. Berryhill,* No. 17-CV-8922, 2019 WL 1416990, at *5 (S.D.N.Y. March 28, 2019) (a claimant does not meet his burden if he "does not point to any medical finding suggesting that his combination of impairments meets or medically equals [a] [l]isting").

*See also David C. v. Comm'r of Soc. Sec.*, 659 F. Supp. 3d 354, 365 (W.D.N.Y. 2023) ("Plaintiff carries the burden of demonstrating that he meets the criteria of a particular listing"). Given the entirety of this record, the Court cannot say that the ALJ erred or that he failed to follow the instructions given on remand. Therefore, the Commissioner's decision will be affirmed.

## V. CONCLUSION AND ORDER

For the reasons stated above, the Court **DENIES** Plaintiff's motion for judgment on the pleadings (Doc. 10), **GRANTS** the Commissioner's motion (Doc. 12), and **DIRECTS** the Clerk to enter judgment in favor of the Defendant Commissioner of Social Security Commissioner.

**/s/ Terence P. Kemp**
**United States Magistrate Judge**